UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| PAUL ALLEN, | : Case No. 3:22-cv-133 |
| Petitioner, | : |
| vs. | : District Judge Walter H. Rice |
| | : Magistrate Judge Caroline H. Gentry |
| WARDEN, PICKAWAY CORRECTIONAL INSTITUTION, | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

Petitioner, an inmate in state custody at the Pickaway Correctional Institution, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 2). This matter is before the Court on the petition, the return of writ, and petitioner's replies. (Doc. 2, 5, 7, 9).

For the reasons stated below, it is recommended that the petition be dismissed because it is time-barred pursuant to 28 U.S.C. § 2241(d)(1).

## I.  FACTUAL BACKGROUND

The Ohio Court of Appeals set forth the following set of facts leading to petitioner's convictions and sentence:[1]

> According to the evidence, Johnny Taylor, Rodney Mack, and Joe Hogue were stopped behind an automobile near the intersection of Blueberry and Gettysburg Avenues in Dayton, Ohio on May 1, 1994, between 2:00 p.m. and 3:00 p.m., when they saw a man emerge from the vehicle in front of them, pull a hood over his head, and run towards a nearby car wash, where Tyrone Vaughn and Xavier Harding were washing a car.

---

[1] 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Because petitioner has neither cited nor presented clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted herein, the state appellate court's factual findings are presumed to be correct.  *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

> Both Taylor and Mack knew Paul Allen, who had donned the hood, and upon turning their car around and returning to the car wash, they saw him running towards Cornell Avenue. Upon arrival, they also found Tyrone Vaughn dead and Xavier Harding wounded in the leg.
>
> At about the same time, Johnny Archie, and his wife, Lasherria, were returning from church when they saw a man wearing a hood and carrying a gun running toward the car wash, and upon returning to the car wash, they found the victims, Vaughn and Harding, and thereupon made a 911 call. Another witness, Joyce Wright, was near a convenience store next to the car wash, and she testified that she saw the shooting, that she saw the shooter's face both before and after the crime, and that Paul Allen was the gunman.
>
> When the police arrived upon the scene, they were advised by Mack, Taylor, and the victim, Xavier Harding, that Paul Allen, who was previously known to them, was the one responsible for the crimes. A warrant was issued for Allen on May 2, 1994, but he was not apprehended until September 30, 1994, at which time the police took a photograph of him. In February, 1995, or about a week before the trial, Harding, Mack, and Taylor were shown a photo spread, and all three picked Paul Allen as the gunman involved at the car wash.
>
> As a matter of defense, the defendant relied upon an alibi, claiming to have been at the Dayton Mall at the time of the shooting, and such defense was supported by Allen's mother, his sister-in-law, and his girlfriend, but the jury apparently chose to believe the eyewitness testimony of Taylor, Mack, Wright, Grubbs, Harding, and the Archies.

(Doc. 4, Ex. 12 at PageID 83-84).

## II.     PROCEDURAL HISTORY

### A.     State Trial Proceedings

On October 7, 1994, a grand jury in the Montgomery County Court of Common Pleas returned an indictment charging petitioner with one count of murder and one count of felonious assault, with both counts including a firearm specification. (Doc. 4, Ex. 1). Petitioner pled not guilty on October 14, 1994. (*See* Doc. 4, Ex. 2 at PageID 41).

2

Petitioner, through counsel, filed motions to suppress statements made by petitioner to law enforcement and any pre-trial identifications. (Doc. 4, Ex. 3, 4). Petitioner also filed a notice of alibi. (Doc. 4, Ex. 5). On February 13, 1995, the trial court overruled in part and sustained in part petitioner's motions to suppress. (Doc. 4, Ex. 6). The trial court sustained petitioner's motion with respect to statements made by petitioner to law enforcement, but overruled petitioner's motion seeking to suppress pre-trial identifications. (*See id.*).

A jury found petitioner guilty as charged in the indictment. On March 16, 1995, petitioner was sentenced to consecutive prison terms of 15-years-to-life for the murder conviction and 8-15 years for the felonious assault conviction. Petitioner also received a 3-year prison term for the merged firearm specifications, to be served prior to and consecutively with the other prison terms. (*See* Doc. 4, Ex. 7).

**B.  Direct Appeal**

Petitioner, through new counsel, filed a notice of appeal to the Ohio Court of Appeals. (Doc. 4, Ex. 9). In his appellate brief, petitioner raised two assignments of error:

1. The trial court erred by denying defendant's motion to suppress the pre-trial photographic line-up identification.

2. Defendant-Appellant lower court attorney's failure to include in the motion to suppress pre-trial identification, the defendant's objection to lack of notice and opportunity to defense counsel allowing defense counsel's presence at the photo spread and said attorney's failure to conduct pre-trial investigation and deposition of witnesses identified by the prosecution constituted ineffective assistance of counsel which denied Defendant-Appellant a fair trial.

(Doc. 4, Ex. 10 at PageID 58). On June 21, 1996, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 4, Ex. 12).

### C. Delayed Appeal to the Ohio Supreme Court

On October 30, 1996, petitioner filed a pro se notice of appeal to the Ohio Supreme Court and a motion for leave to file a delayed appeal. (Doc. 4, Ex. 14). On December 18, 1996, the Ohio Supreme Court denied the motion for leave to file a delayed appeal. (Doc. 4, Ex. 15).

### D. Post-Conviction Motions

Petitioner subsequently filed several post-conviction motions.

#### 1. *Motion for Resentencing*

On December 12, 1997, petitioner filed a pro se "Motion to Vacate and Modify Sentence to Conform with the New Laws of Amended Substitute Senate Bill (2), R.C. 1.58 (B)." (Doc. 4, Ex. 16). On April 8, 1998, the trial court overruled the motion, finding the motion untimely and that the Senate Bill was inapplicable. (Doc. 4, Ex. 18). Petitioner did not appeal this decision.

#### 2. *Motion for New Trial*

Several years later, on December 13, 2004, petitioner, through counsel, filed a motion for a new trial and second petition to vacate sentence. (Doc. 4, Ex. 19). On April 15, 2005, the trial court overruled petitioner's motion. (Doc. 4, Ex. 21). On May 13, 2005, petitioner filed a notice of appeal. (Doc. 4, Ex. 22). On September 29, 2005, the appellate court dismissed the appeal for lack of prosecution based on petitioner's failure to file an appellate brief. (Doc. 4, Ex. 24). Petitioner did not seek further review in the Ohio Supreme Court.

#### 3. *First Motion for Resentencing*

Several years later, on August 23, 2010, petitioner filed a pro se motion captioned "Motion for De Novo Resentencing to Achieve a 'Final Appealable Order' under R.C. § 2502.02 & Crim. R. 32(c)." (Doc. 4, Ex. 25). In the motion, petitioner asserted that the sentencing entry

4

failed to include the manner of conviction. (*Id.* at PageID 163). On September 3, 2010, the trial court issued a *nunc pro tunc* termination entry to incorporate that petitioner was found guilty by a jury. (Doc. 4, Ex. 27). The trial court overruled petitioner's motion for a *de novo* resentencing on December 10, 2010. (Doc. 4, Ex. 29). Petitioner did not appeal this decision.

### 4.     *Second Motion for Resentencing*

Several years later, on December 24, 2018, petition filed another pro se motion for resentencing, in which he challenged the September 3, 2010 *nunc pro tunc* termination entry. (Doc. 4, Ex. 30). The trial court promptly overruled petitioner's motion. (Doc. 4, Ex. 31).

Petitioner filed a pro se notice of appeal. (Doc. 4, Ex. 32). In his merit brief, petitioner raised the following four assignments of error:

1. Did the trial court err by failing to have Defendant present at Re Sentencing hearing held on the September 3rd 2010 Nunc Pro Tunc hearing pursuant to Crim.R.43(A).

2. Trial court committed Plain Error at trial in 1994 when it denied appellant a Mistrial in violation of appellant's Due Process and Right to a fair and impartial trial when the court allowed comments in the presence of the jury that defendant was incarcerated.

3. Appellant Paul Allen contends that his trial counsel rendered ineffective assistance of counsel's duties at trial by failing to object to Witness testimony that defendant was incarcerated, in violation of Defendant's Right to a fair trial and due process and equal protection.

4. Appellant Paul Allen contends that his trial counsel Rendered ineffective assistance of counsel with the choices made to not request dismissal of the entire case after the trial court granted defendant's suppression of Miranda Rights not being applied in defendant Paul Allen's case that resulted in fruits of a poisonous tree.

(Doc. 4, Ex. 33 at PageID 187). On November 8, 2019, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 4, Ex. 36).

Petitioner filed a motion for reconsideration, which was denied on April 2, 2020. (Doc. 4, Ex. 37, 39). Petitioner also sought review by the Ohio Supreme Court. (Doc. 4, Ex. 40). On March 3, 2020, the Ohio Supreme Court declined jurisdiction over the appeal. (Doc. 4, Ex. 42).

### 5. *Motion to Correct Sentence*

On October 22, 2020, petitioner filed a pro se "Motion to Correct a Facially Illegal, Void Sentence Based on Criminal Rule 52(B) Plain Error Analysis." (Doc. 4, Ex. 43). On December 15, 2020, the trial court overruled petitioner's motion. (Doc. 4, Ex. 44).

Petitioner filed a pro se notice of appeal to the Ohio Court of Appeals. (Doc. 4, Ex. 45). In his merit brief, petitioner raised the following single assignment of error:

> Trial Court abused its discretion when it granted Appellant's suppression hearing stating that his Miranda rights had been violated, yet failed to grant Appellant relief pursuant to Miranda v. Arizona.

(Doc. 4, Ex. 46 at PageID 286). On August 13, 2021, the appellate court overruled petitioner's assignment of error and affirmed the judgment of the trial court. (Doc. 4, Ex. 49). The court reasoned that "[e]ven setting aside the extreme untimeliness of the motion, [petitioner's] argument about the improper admission of suppressed statements at trial could have been raised on direct appeal." (*Id*. at PageID 306). The court further held that "the trial court correctly found res judicata applicable." (*Id.*).

Petitioner sought review by the Ohio Supreme Court. (Doc. 4, Ex. 50). On November 9, 2021, the Ohio Supreme Court declined jurisdiction over the appeal. (Doc. 4, Ex. 52).

### E. Federal Habeas Corpus

On May 19, 2022, petitioner initiated the instant federal habeas corpus action. (*See* Doc. 1). Petitioner raises the following ground for relief:

> **GROUND ONE**: The privilege against self-incrimination protects the individual from being compelled to <u>incriminate himself in any manner</u>. Petitioner Paul Allen asserts to this honorable court that although; *Statements merely intended to be exculpatory by the defendant are often used to impeach his/her testimony at trial,* the constitution forbids this type of practice[.]

(Doc. 2 at PageID 27).

Respondent filed a return of writ in opposition to the petition (Doc. 5), and petitioner replied (Doc. 7, 9). Respondent argues that petitioner's asserted ground for relief is time-barred, procedurally defaulted, and without merit.

### III. ANALYSIS

Under 28 U.S.C. § 2244(d)(1), as amended by § 101 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, a person in custody pursuant to the judgment of a state court must file an application for a writ of habeas corpus within one year from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The limitations period is tolled during the pendency of a properly filed application for state post-conviction relief or other collateral review. 28 U.S.C. § 2244(d)(2).

7

No evidence in the record suggests that the circumstances described in §§ 2244(d)(1)(B)-(D) apply here. Petitioner has not alleged that a State-created impediment prevented him from filing the instant petition, that his claims are governed by a newly recognized constitutional right made retroactively applicable to his case, or that due diligence was required to discover the factual predicate of his claim. Instead, since petitioner's ground for relief is based on an alleged error that occurred during the trial court proceedings, he was aware of the facts underlying his claim. Therefore, the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) began to run when petitioner's conviction became final "by the conclusion of direct review or the expiration for the time for seeking such review."[2]

Petitioner's conviction became final on August 5, 1996, upon the expiration of the 45-day period for seeking review in the Ohio Supreme Court of the decision issued by the Ohio Court of Appeals on June 21, 1996. Ohio Sup. Ct. Prac. R. 7.01(A)(1)(a)(1); *Gonzalez v. Thaler,* 565 U.S. 134, 149-52 (2012) (holding that because the petitioner did not appeal to the State's highest court, his conviction became final under § 2244(d)(1)(A) "when his time for seeking review with

---

[2] Based on his claim that his ground for relief amounted to "plain error and or structur[al] error," petitioner contends that his claims can be raised at any time and the AEDPA limitations period is in applicable. (*See* Doc. 2 at PageID 30. *See also* Doc. 9 at PageID 382-83). However, petitioner's claim that his ground for relief amounted to plain error does not permit him to bypass the statute of limitations applicable in the federal habeas corpus action. *See Dodson v. Warden*, Case No. 18-3146, 2018 WL 3868964, at *2 (6th Cir. May 16, 2018) ("Nor does a claim of 'plain error' allow [petitioner] to circumvent the statute of limitations."). *See also Shedwick v. Warden*, No. 16-3203, 2016 WL 11005052, at *3 (6th Cir. Dec. 30, 2016) (noting that while plain error may be reviewable at any time under Ohio law, pursuant to Ohio Rule of Crim. Proc. 52(B), "that rule does not apply to a federal district court"); *Jennings v. Warden*, No. 3:16-cv-369, 2016 WL 5799065, at *1 (S.D. Ohio Oct. 5, 2016) (rejecting the petitioner's claim that the statute of limitations was inapplicable because the petitioner asserted plain error under Fed. R. Crim. P.52(b), noting that this rule "does not govern habeas corpus proceedings which are subject to the statute of limitations in 28 U.S.C. § 2244") (Report and Recommendation), *adopted* 2016 WL 7103372 (S.D. Ohio Dec. 6, 2016). Similarly, petitioner may not avoid the applicable limitations period by arguing that his ground for relief involved a structural error. *See Dunaway v. Warden*, Case No. 1:14-cv-772, 2015 WL 3885720, at *10 (S.D. Ohio June 24, 2015) (rejecting argument that the federal habeas corpus statute of limitations is inapplicable because of alleged structural error) (Report and Recommendation), *adopted*, 2015 WL 5212051 (S.D. Ohio Sept. 8, 2015).

the State's highest court expired"). The one-year statute of limitations began to run on the next business day, which was August 6, 1996. Fed. R. Civ. P. 6(a); *Bronaugh v. Ohio,* 235 F.3d 280, 285 (6th Cir. 2000).

To the extent that petitioner contends that the trial court's September 3, 2010 *nunc pro tunc* entry impacted the date upon which his conviction became final, his argument is unavailing. It is true that in *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016), the Sixth Circuit held that a *nunc pro tunc* order that added a previously omitted post-release control term was a "new judgment" that reset the statute of limitations. But the Sixth Circuit also noted that a limited resentencing does not reset the limitations period unless it results in a new and "worse-than-before" sentence:

> Our analysis is consistent with a line of cases in which a limited resentencing benefits the prisoner, such as in a sentence-reduction proceeding under 18 U.S.C. § 3582(c) or Criminal Rule 35(b). Such sentence modifications, federal law provides, do not disturb the underlying initial judgment, which continues to "constitute[ ] a final judgment." 18 U.S.C. § 3582(b). As several other courts of appeals have noted, such "a reduced sentence [is] not a new one." *United States v. Jones*, 796 F.3d 483, 485 (5th Cir. 2015) (§ 3582(c)); *see, e.g., White v. United States*, 745 F.3d 834, 836–37 (7th Cir. 2014) (§ 3582(c)); *United States v. Olvera*, 775 F.3d 726, 729 (5th Cir. 2015) (Rule 35(b)); *Murphy v. United States*, 634 F.3d 1303, 1309 (11th Cir. 2011) (Rule 35(b)) (collecting cases); *see also Reichert v. United States*, 101 Fed.Appx. 13, 14 (6th Cir. 2004) (Rule 35(b)). A new, worse-than-before sentence, by contrast, amounts to a new judgment. *See Burton*, 549 U.S. at 156–57, 127 S.Ct. 793.

*Crangle,* 838 F.3d at 678.

In this case, the sole purpose of the September 3, 2010 *nunc pro tunc* entry was to reflect that petitioner was convicted by a jury. Petitioner has not argued, much less demonstrated, that the entry constitutes a new, "worse-than-before" sentence contemplated by *Crangle*. *See Foster v. Warden*, No. 1:15-cv-713, 2018 WL 6803733, at *2 (S.D. Ohio Dec. 27, 2018) (finding that a

9

*nunc pro tunc* sentencing entry "reflecting that Petitioner had been found guilty by a jury," in addition to other changes, did not restart the limitations period under *Crangle*).

Therefore, the one-year statute of limitations began to run when petitioner's conviction became final on August 6, 1996. It ran for 85 days—from August 6, 1996 to October 30, 1996—until petitioner sought review in the Ohio Supreme Court. (*See* Doc. 4, Ex. 14). The statute of limitations is tolled during the pendency of "properly filed" applications for state post-conviction relief or other collateral review. 28 U.S.C. § 2244(d)(2); *Holland v. Florida,* 560 U.S. 631, 635 (2010); *Allen v. Siebert,* 552 U.S. 3, 4 (2007) (per curiam); *Vroman v. Brigano,* 346 F.3d 598, 602 (6th Cir. 2003). Therefore, the limitations period was tolled until the Ohio Supreme Court denied petitioner's motion on December 18, 1996.

The statute of limitations began to run again on December 19, 1996, and expired 280 days later on September 24, 1997. Because petitioner did not file his next state-court filing until December 12, 1997—when the limitations period had already expired—that filing (and all subsequent state-court filings) could not serve to toll or restart the statute of limitations. *See Vroman*, 346 F.3d at 602 ("The tolling provision does not, however, 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run.") (internal quotations and citation omitted).

Because petitioner did not file his federal habeas petition until May 19, 2022, more than twenty-four years after the one-year statute of limitations had expired, the petition is time-barred unless equitable tolling applies. Although the AEDPA's statute of limitations can be equitably tolled "when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control," this relief is granted only "sparingly." *Hall v.*

10

*Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749 (6th Cir. 2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783-84 (6th Cir. 2010)).  A habeas petitioner may only qualify for equitable tolling if he demonstrates that: (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstance stood in his way and prevented timely filing."  *Id.* (quoting *Holland*, 130 S.Ct. at 2562 (internal quotations omitted)); *see also Pace,* 544 U.S. at 418.

Petitioner has not demonstrated that he is eligible for equitable tolling.  Because he waited more than 25 years—from August 5, 1996 to May 19, 2022—to file his habeas petition, petitioner has not demonstrated that he was diligent in pursuing his federal rights.  *Vroman*, 346 F.3d at 605 (finding that petitioner's decision to proceed solely in state court "rather than filing his federal habeas petition and protecting his federal constitutional rights, demonstrates a lack of diligence").  Moreover, petitioner did not identify any extraordinary circumstance that prevented from timely seeking relief.  Since equitable tolling does not apply, the petition is time-barred.

Finally, petitioner has not demonstrated that the procedural bar to review should be excused based on a colorable showing of actual innocence.  "To invoke the miscarriage of justice exception to AEDPA's statute of limitations, . . . a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of . . . new evidence.'"  *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)).  No such showing has been made in this case.

**IV.     CONCLUSION**

Accordingly, the undersigned concludes that the petition is barred from review by the applicable one-year statute of limitations in 28 U.S.C. § 2254.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The petition be **DENIED** with prejudice on the ground that the petition is time-barred under 28 U.S.C. § 2244(d)**.**

2. A certificate of appealability not issue with respect to any of the claims for relief alleged in the petition, which this Court has concluded are barred from review on a procedural ground, because under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether the Court is correct in its procedural ruling.[3]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

October 19, 2023                  */s/ Caroline H. Gentry*
                                             CAROLINE H. GENTRY
                                             UNITED STATES MAGISTRATE JUDGE

---

[3] Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in his time-barred grounds for relief. *See Slack,* 529 U.S. at 484.

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).